**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Julio J.,

Petitioner,

v.

Todd Blanche, *Attorney General*; Markwayne Mullin, *Secretary, U.S. Department of Homeland Security*; David Venturella, *Acting Director of Immigration and Customs Enforcement*; David Easterwood, *Acting Director, St. Paul Field Office Immigration and Customs Enforcement*; Joel Brott, *Sheriff of Sherburne County Jail*,

Respondents.

File No. 26-CV-04619 (JMB/ECW)

**ORDER**

---

David L. Wilson and Gabriela Sophia Anderson, Wilson Law Group, Minneapolis, MN, for Petitioner Julio J.

David W. Fuller, United States Attorney's Office, Minneapolis, MN, for Respondents Todd Blanche, Markwayne Mullin, David Venturella, and David Easterwood.

---

This matter is before the Court on Petitioner Julio J.'s[1] Petition for Writ of Habeas Corpus (Petition) under 28 U.S.C. § 2241 (Doc. No. 1 [hereinafter, "Pet."]), which names Todd Blanche, Markwayne Mullin, David Venturella, David Easterwood, and Joel Brott

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in immigration cases.

as Respondents. (*Id.*) For the reasons explained below, the Court grants the Petition.

## FINDINGS OF FACT

1. Julio J. is a 43-year-old native and citizen of Mexico. (Pet. ¶ 11; Doc. No. 8-1 at 1.)

2. Julio J. lived in the United States for over a decade prior to his detention. (*Id.* ¶ 31.) He has a U.S. citizen wife and two U.S. citizen children. (*Id.*)

3. On October 2, 2026, Julio J. was arrested for DWI and placed in state custody at the Dakota County jail for two days. Following his release from state custody, on October 4, 2026, Respondents took Julio J. into their custody. (*Id.* ¶¶ 27–29.) According to Respondents, "after establishing probable cause through biometric confirmation of the Petitioner's identity and a record check of federal databases," they concluded Julio J. was removable. (Doc. No. 7 at 2.)

4. Julio J. did not try to flee and obeyed the agents' orders. (*Id.* ¶ 31.)

5. Julio J. was not shown a warrant at the time of his detention. (*Id.* ¶ 30.)

6. Instead, at some unknown time during administrative processing, someone purported to serve Julio J. with the Form I-200 issued by Reller, two days prior, on October 2, 2026. (Doc. No. 8-2.) It cannot be ascertained from the Certificate of Service on the Form I-200 who purported to serve it, as the person's signature is an illegible scribble with no notation of the person's rank, badge number, or title, as follows:


(La
11091
Name and Signature of Officer

(*Id.*)

7. The Form I-200 administrative warrant was directed to "[a]ny immigration officer authorized pursuant to sections 236 and 287 of the [Immigration and Nationality Act (INA)] [i.e., 8 U.S.C. §§ 1226, 1357] and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations." (Doc. No. 8-2.) Thus, Respondents detained Julio J. pursuant to their authority under 8 U.S.C. § 1226.

8. Also on October 4, 2026, Holien issued a form I-862 Notice to Appear (NTA) to Julio J., which charges Julio J. as removable for being present in the United States without having been admitted or paroled, INA § 212(a)(6)(A)(i), (a)(7)(A)(i)(I). (Doc. No. 8-4 at 1.) Ramnarine served the NTA on Julio J. that same day. (*Id.* at 3.)

9. Julio J. was transferred to Sherburne County Jail where he is currently detained. (*Id.* ¶¶ 33–34.)

10. On October 26, 2026, Julio J. filed a petition for writ of habeas corpus. (Pet.)

11. On October 26, 2026, the Court ordered Respondents to file a response to the Petition on or before 11:00 a.m. on October 28, 2026. (Doc. No. 4.) The Court expressly ordered that Respondents make an affirmative statement whether Respondents complied "with the Immigration and Nationality Act and accompanying regulations when they took Petitioner into custody." (*Id.*)

12. On October 28, 2026, Respondents filed a timely response to the Petition. (Doc. No. 7.)

**DISCUSSION**

In his Petition, Julio J. seeks immediate release or, in the alternative, a bond hearing, arguing that his detention violates the Due Process Clause of the Fifth Amendment and the

requirements of the INA and accompanying regulations, namely, 8 C.F.R. § 287.8(c) and 8 U.S.C. § 1357(a)(2). In response to the Petition, however, Respondents argue that their detention of Julio J. comports with the requirements of due process and the terms of 8 U.S.C. § 1225(b)(2). For the reasons set forth below, the Court grants the Petition.

**A. Right to Habeas Relief**

A writ of habeas corpus may be granted to any person who demonstrates he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3); *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (concluding that the Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States" (citing U.S. Const., Art. I, § 9, cl. 2)). For most of the nation's history, habeas review "has remained a critical check on the Executive, ensuring that it does not detain individuals except in accordance with law." *Hamdi*, 542 U.S. at 525 (quotation omitted). The right to challenge the legality of a person's confinement through a petition for a writ of habeas corpus "extends to . . . immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citation omitted). The petitioner bears the burden of proving that his detention is illegal by a preponderance of evidence. *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154 (D. Minn. 2025).

**B. Inapplicability of 8 U.S.C. § 1225**

It is an undisputed matter of fact that Respondents detained Julio J. pursuant to their discretionary authority under 8 U.S.C. § 1226. The Form I-200 administrative warrant was directed to "[a]ny immigration officer authorized pursuant to sections 236 and 287 of the [INA] [i.e., 8 U.S.C. §§ 1226, 1357] and part 287 of title 8, Code of Federal Regulations,

to serve warrants of arrest for immigration violations." (Doc. No. 8-2.) In response to the Petition, however, Respondents advance a different basis for the detention of Julio J.: 8 U.S.C. § 1225(b)(2)(A), as interpreted by *Avila v. Bondi*, 170 F.4th 1128, 1133–35 (8th Cir. 2026) (concluding that section 1225(b)(2) requires the mandatory detention noncitizens, without any individualized determination and regardless of whether the noncitizen is encountered at the border at the time of entry or in the interior of the United States months, years, or decades after entry); *But see Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1180, No. 25-6842, 2026 WL 2196424, at *9, 16 (9th Cir. July 30, 2026) (rejecting Respondents' "new interpretation" as inconsistent with "the assertedly unambiguous language of the statute" and because "it raises various textual and interpretive problems," citing similar holdings from the Second, Sixth, Tenth, and Eleventh Circuits).

This Court concludes that Respondents cannot now change the basis for the detention of Julio J. He was detained under section 1226 alone, and Respondents advance no legal argument to support the proposition that they can alter this fact through filing of their written responsive submissions. Thus, just as it is stated in the Form I-200 on which Julio J.'s detention is based, the Court concludes that the Respondents detained Julio J. pursuant to the framework of 8 U.S.C. § 1226. *See, e.g.*, *Martha C.G.P. v. Blanche*, No. 26-CV-2308 (DWF/JFD), 2026 WL 1329577, at *2 (D. Minn. May 13, 2026) (rejecting respondents' contention that petitioner was subject to mandatory detention under section 1225(b) where Form I-200 warrant served during petitioner's arrest represented that detention was pursuant to section 1226); *Hector J.A.S. v. Shea*, No. 26-CV-2242

(JRT/DLM), 2026 WL 1243500, at *2 (D. Minn. May 6, 2026) (same); *see also Espinoza-Avalos*, No. 8:26-CV-0191, 2026 WL 1396593, at *1–3 (D. Neb. May 19, 2026).

**C. Violation of Applicable Regulatory and Statutory Requirements**

Having determined that Respondents have detained Julio J. pursuant to 8 U.S.C. § 1226, the Court considers whether Julio J. was brought into custody pursuant to a valid warrant or pursuant to an authorized warrantless arrest.[2] For the reasons discussed below, the Court concludes he was not.

Under the INA and supporting regulations, agents may detain a non-citizen either on a valid warrant or in accordance with applicable warrantless arrest procedures. 8 U.S.C. § 1357; 8 C.F.R. § 287.8(c)(2)(ii); *see also Venancio P.J. v. Blanche*, No. 26-CV-2740 (ECT/JFD), 2026 WL 1862252, at *2 (D. Minn. June 29, 2026). DHS's "general procedures" for all "enforcement activities," including for the "conduct of arrests," requires that "[a] warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained." 8 C.F.R. § 287.8(c)(2)(ii). Here, Respondents violated applicable regulatory and statutory requirements in at least five respects.

First, the Form I-200 warrant is invalid because it issued prior to the NTA. Pursuant to 8 U.S.C. § 1226(a), "[o]n a warrant issued by the Attorney General, a [non-citizen] may

[2] Although the Court ordered Respondents to address whether the detention of Julio J. complied with the Immigration and Nationality Act and accompanying regulations (Doc. No. 5), Respondents make no argument that they complied with 8 U.S.C. § 1357, 8 C.F.R. § 287.8, or § 236.1. Because the facts underlying these violations are not contested, the Court grants the Petition.

be arrested and detained pending a decision on whether the [non-citizen] is to be removed from the United States." 8 U.S.C. § 1226(a); *see also Ahmed M. v. Bondi*, No. 25-CV-4711 (ECT/SGE), 2026 WL 25627, at *3 (D. Minn. Jan. 5, 2026) ("Issuance of a warrant is a necessary condition to justify discretionary detention under section 1226(a)." (quotation omitted)). A Form I-200 is an administrative warrant which authorizes a non-citizen's detention if it is issued "[a]t the time of issuance of the [NTA], or at any time thereafter and up to the time removal proceedings are completed." 8 C.F.R. § 236.1(b) (emphasis added). Putting both rules together, DHS may take someone into custody using a Form I-200 only if the Form I-200 issues at the same time or after DHS issues an NTA. *See* 8 U.S.C. § 1226(a); 8 C.F.R. § 236.1(b)(1). Here, Respondents did not follow this sequence. The record establishes that respondents generated the NTA after the Form I-200 warrant—specifically, the Form I-200 on its face states that it was issued on October 2, 2026 (Doc. No. 8-2); however, Holien issued the NTA two days later, on October 4, 2026 (Doc. No. 8-4). Thus, the Court concludes that the Form I-200 warrant was plainly invalid under 8 C.F.R. § 236.1(d).

Second, the Form I-200 warrant is invalid because there are unspecified facts that Respondents point to as their basis for establishing probable cause for taking Julio J. into custody. The Form I-200 relied on "biometric confirmation of the subject's identity and a records check of federal databases" as the determination for probable cause. (Doc. No. 8-2.) The Respondent's Form I-213 record for Julio J. includes no information regarding

concerning who checked records, what records were checked[3], how any of agent reached the conclusion that Julio J. was "present in the United States without inspection," which necessarily requires drawing inferences from an absence of a record. There is no declaration describing the information reviewed or explaining what information is being stored and searched on DHS databases. The Court cannot credit Ramnarine's recollection in the Form I-213 absent some evidence in the record that points to how information about Julio J. that may be stored within DHS databases establishes probable cause that he is removable from the United States. *See Jaminton R.B. v. Mullin*, No. 26-CV-3091 (ECT/JFD), 2026 WL 2350324, at *2 (D. Minn. Aug. 13, 2026) (holding that a Form I-200 lacked probable cause because "[b]iometric confirmation involves the measurement or analysis of a unique physical or behavioral characteristic" whereas the "record contain[ed] no information showing . . . biometric confirmation of [Petitioner's] identity").

Third, the Form I-200 is invalid because the serving officer cannot be identified. A Form I-200—like the form under which authority Respondents took Julio J. into custody (Doc. No. 8-2)—is to be "issued only by those immigration officers listed in [section] 287.5(e)(2) . . . and may be served only by those immigration officers listed in [section] 287.5(e)(3)." 8 C.F.R. § 236.1(b)(1). Thus, DHS may detain a non-citizen using Form I-

[3] The court acknowledges that the Form I-213 includes a section called "Records Checked" which lists "EARM," "TECS," and "CIS" as records checked that came back with "positive results." (Doc. No. 8-1 at 2.) However, Respondents do not provide any indication as to what those acronyms mean, or, more importantly, what information was reviewed, what information is being stored, and how that information is collected. Absent some explanation by someone with personal knowledge, the Court is unable to conclude that the Form I-200 was supported by probable cause.

200 only if the Form I-200 indicates who the issuing and the serving immigration officers are. *See* 8 U.S.C. § 1226(a); 8 C.F.R. § 236.1(b)(1); *Tanneh W.S. v. Blanche*, No. 26-CV-2775 (LMP/EMB), 2026 WL 1801140, at *3 (D. Minn. June 23, 2026) (holding that a Form I-200 warrant was valid when both the issuing and serving officers' information verified them as deportation officers). This is because only immigration officers are "authorized to issue warrants of arrest under the relevant regulation." *Fernando C.C. v. Bondi*, No. 26-CV-1235 (LMP/JFD), 2026 WL 446408, at *5 (D. Minn. Feb. 17, 2026). Here, Respondents did not establish that they satisfied the second requirement of 8 C.F.R. § 236.1(b)(1). Though the record presented establishes that the Form I-200 warrant was issued by "(A)SDDO Reller," it was served by an individual identified only by an illegible scribble, with no indication of their badge number, rank, or title. (*See* Doc. No. 8-2.) *Cf. Fernando C.C.*, 2026 WL 446408, at *5. Thus, Respondents violated 8 C.F.R. § 236.1(b)(1), and the warrant is invalid.

Fourth, Respondents did not comply with the requirements of section 287.8(c)(2)(iii). That regulation provides that, "[a]t the time of the arrest," the detaining officers must do the following two things: "(A) [i]dentify himself or herself as an immigration officer who is authorized to execute an arrest; and (B) [s]tate that the person is under arrest and the reason for the arrest." *Id.* § 287.8(c)(2)(iii). There is no evidence that any officer identified themselves to Julio J. or informed Julio J. that he "[wa]s under arrest and the reason for the arrest," as required by regulation. *See id.* § (c)(2)(iii). Absent any evidence that officers identified themselves to Julio J. and informed him of the reason

for his detention, the Court concludes that Respondents violated the plain requirements of 8 C.F.R. § 287.8(c)(2)(iii).

Fifth, Respondents did not comply with the requirements of a warrantless detention. The record presented establishes that Respondents took Julio J. into custody without a valid warrant. (Pet. ¶ 30.) Therefore, Respondents must establish that both requirements of 8 U.S.C. § 1357(a)(2) were satisfied. Respondents have not done so.

Under the INA, absent a valid warrant (as here), Respondents may take a person into custody if there is probable cause "to believe that the [noncitizen] so arrested is [1] in violation of any[] law or regulation [made in pursuance of law regulating the admission, exclusion, expulsion, or removal of noncitizens] and [2] is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2); *see also* 8 C.F.R. § 287.8 (c)(2)(ii) (stating that a warrant "shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained"); *U.S. v. Diaz-Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010) (concluding that the phrase "reason to believe" in section 1357(a)(2) means "constitutionally required probable cause"). Here, Respondents make no argument whatsoever that officers satisfied the second prong of section 1357(a). (*See* Doc. No. 7.) Absent any argument, the Court necessarily concludes that Respondents have not established that at the time they initiated the detention, officers had probable cause to believe he was likely to escape.[4] The record

[4] Given the conclusion that Respondents have not established the second prong of section 1357(a)(2), the Court need not determine whether Respondents established the first prong of this section.

presented in this case establishes that Julio J. was cooperative with detaining agents and did not try to flee the ICE agents. (Pet. ¶ 31.) Thus, the Court concludes that Respondents violated section 1357(a)(2).

For each of these independent reasons, the detention of Julio J. is unlawful and immediate release is the appropriate remedy. *Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("Habeas is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release."); *see also, e.g.*, *Felix Alberto J.M. v. Blanche*, No. 26-CV-2944 (LMP/DLM), 2026 WL 1906596, at *5 (D. Minn. July 2, 2026) (concluding Respondents' detention of petitioner was invalid warrantless arrest and petitioner was entitled to remedy of release); *Venancio P.J.*, 2026 WL 1862252, at *3 (same); *Hector J.A.S.*, 2026 WL 1243500, at *2 (ordering release of petitioner where respondents did not issue NTA until booking, well after taking the petitioner into custody); *Pina C.D.B. v. Bondi*, No. 26-CV-1929 (KMM/DJF), 2026 WL 810676, at *3 (D. Minn. Mar. 24, 2026) (concluding "immediate release is the proper remedy" when a person is taken into custody without a valid administrative warrant); *Jouquin C.S. v. Bondi*, No. 26-CV-1438 (DWF/DJF), 2026 WL 483256, at *2–3 (D. Minn. Feb. 20, 2026) (ordering release because the Form I-200 was invalid); *Claudio A.A. v. Bondi*, No. 26-CV-742 (KMM/LIB), 2026 WL 468232, at *7 (D. Minn. Feb. 12, 2026) (concluding that failure to provide a warrant before taking a person into pursuant to section § 1226(a) is a violation of due process rights and collecting cases), *report and recommendation adopted*, No. 26-CV-742 (KMM/LIB), 2026 WL 478347 (D. Minn. Feb. 18, 2026); *Carlos F.P.P v. Blanche*, No. 26-CV-3123 (JWB/JFD), 2026 WL 2824801, at *7 (D. Minn. Sep. 21, 2026) (ordering release after

finding that respondents did not follow § 1357 requirements of warrantless arrest and § 1225 did not "independently authorize continuation of [petitioner's] custody").[5]

**ORDER**

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT the Petition (Doc. No. 1) is GRANTED as follows:

1. Respondents are ORDERED to release Petitioner Julio J. immediately, without conditions, and in any event no later than 4:00 p.m. CT on October 29, 2026.

2. On or before 11:00 a.m. CT on October 30, 2026, counsel for Respondents shall file a letter affirming that they have released Petitioner Julio J.

3. On or before 11:00 a.m. CT on October 30, 2026, counsel for Respondents shall also file a declaration pursuant to 28 U.S.C. § 1746 by an individual with personal knowledge that states when and where the Petitioner was released, attaches any and all documentation concerning the Petitioner's release, and affirms with supporting documentation that all property of Petitioner was returned to Petitioner upon release (or, if property is retained, state which property is retained, the legal basis for its retention, and affirm that Respondents duly provided Petitioner with certified copies of any and all immigration-related documentation). Respondents must submit each of

[5] Although the Court need not address the question whether Julio J.'s detention violates the Fifth Amendment, it nevertheless alternatively concludes that, on balance, the *Mathews v. Eldridge* due-process factors tip in Julio J.'s favor. Julio J. has a significant private interest at stake (i.e., his liberty, his detention in a carceral setting); the risk of erroneous deprivation through incarceration is needlessly high when available an inexpensive procedures protect against erroneous deprivations of liberty; and the federal government has very little interest in incarcerating individuals en masse who pose little or no risk of flight or danger to the community like Julio J., who, by Respondents' own documents show had zero criminal history and to whom DHS had very recently issued a work permit. Thus, Julio J.'s ongoing detention is also unlawful for this reason. *See, e.g.*, *R.M. v. Blanche*, No. 26-CV-2283 (LMP/DLM), 2026 WL 1506306 (D. Minn. May 29, 2026) (concluding that respondents' mandatory detention without bond under 8 U.S.C. § 1225(b)(2) and *Avila* violated petitioner's rights to procedural due process and ordering a bond hearing); *Jesus Alejandro G.A. v. Blanche*, No. 26-CV-1932 (LMP/ECW), 2026 WL 1383138 (D. Minn. May 18, 2026) (same).

the following three forms to affirm return of Petitioner's property: I-77, I-216, and G-589. If Petitioner's property is lost, Respondents must also submit form I-387, "Report of Detainee's Missing Property." If Respondents cannot provide one or more of these forms, Respondents must address why they are unable to do so.

4. Petitioner Julio J. may move separately within 30 days of final judgment in this action to recover attorney's fees and costs under the Equal Access to Justice Act, 20 U.S.C. § 2412(d).

5. To the extent Petitioner Julio J. seeks additional relief, the Petition is DENIED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: October 28, 2026

/s/ *Jeffrey M. Bryan*
Judge Jeffrey M. Bryan
United States District Court